**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| DEBORAH K. GERMAN, | : |
| Plaintiff, | : |
| v. | : CASE NO.: 1:11-CV-059 (WLS) |
| AGRI DYNAMICS, INC., AGRI DYNAMICS, INC. d/b/a INDUSTRIAL MANUFACTURING d/b/a INDUSTRIAL MANUFACTURING CO | : |
| Defendant. | : |

**ORDER**

Presently pending before the Court is Defendant Agri Dynamics, Inc.'s Motion for Partial Summary Judgment (Doc. 46). For the following reasons, Agri Dynamics, Inc.'s Motion for Partial Summary Judgment (Doc. 46) is **GRANTED**.

**I.  PROCEDURAL HISTORY**

Plaintiff Deborah K. German worked for Agri Dynamics, Inc. ("AGI" or "Defendant") from December 1, 2004 to September 23, 2009. (Doc. 46-1 ¶ 1.) Plaintiff filed a Complaint in the above-captioned matter, asserting claims for sex discrimination (Count I) and hostile work environment (Count II) in violation of Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e *et seq.*[1] (Doc. 1.) Plaintiff began working for ADI as a production superintendent on December 1, 2004. (*Id.* ¶ 8.) Plaintiff was removed from the position of production superintendent on or about September 22, 2009. (*Id.* ¶ 20.) Plaintiff contends that she was demoted and replaced

---

[1] Plaintiff's Complaint also included a third claim for negligent hiring and supervision (Count III) that was voluntarily dismissed by Plaintiff on July 19, 2011. (Doc. 23 at 13-14.)

1

with a male after complaining about the male sales staff's interference with her job duties. (*Id.*) Defendant denies this allegation. (Doc. 27 ¶ 20.) Plaintiff was terminated on October 29, 2009. (Doc. 1 ¶ 22.)

On February 20, 2013, Defendant moved for partial summary judgment as to only Count II—Plaintiff's hostile work environment claim. (Doc. 46.) Plaintiff filed her Response in Opposition to this motion on March 27, 2013. (Doc. 62.) Defendant filed its Reply on April 29, 2013. (Doc. 71.) The briefing for Defendant's Motion for Summary Judgment has concluded, and the Court finds that Defendant's Motion for Summary Judgment is ripe for review.

## II. RELEVANT FACTUAL BACKGROUND

The following facts are derived from the Complaint (Doc. 1); Defendant's Answer (Doc. 27); Defendant's Statement of Undisputed Facts (Doc. 46-1) and Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. 63 at 1-5); and Plaintiff's Statement of Disputed Material Facts (*Id.* at 5-10) and Defendant's Response to Plaintiff's Statement of Disputed Facts (Doc. 72), all of which were submitted pursuant to Local Rule 56[2]; and the record in this case. Where relevant, the factual summary also

---

[2] Local Rule 56 states:

> The movant for summary judgment under Rule 56 of the Federal Rules of Civil Procedure shall attach to the motion a separate and concise statement of the material facts to which the movant contends there is no genuine issue to be tried. Each material fact shall be numbered separately. Statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court. Affidavits and the introductory portions of briefs do not constitute a statement of material facts.

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate. The response that a party has insufficient knowledge to admit or deny is

contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56.

Plaintiff was employed with Agri Dynamics, Inc. from December 1, 2004 to September 23, 2009, as a Production Superintendent.  (Doc. 46-1 ¶ 1.)  During Plaintiff's employment, AGI states that it maintained an Employee Handbook (the "Handbook") that included a Sexual Harassment policy (the "Policy") prohibiting slurs, jokes, and other verbal, graphic, or physical conduct relating to an individual's race, color, sex, age, religion, national origin, or physical or mental handicap.[3]  (Doc. 46 ¶ 2.)  The Policy also prohibited unsolicited sexual advances, request for sexual favors or verbal, graphic, or physical conduct of a sexual nature.  (*Id.*)  Plaintiff was aware, and received a copy, of the Sexual Harassment Policy.[4]  (*See* Doc. 54 at 133:7-134:1) (In her deposition, Plaintiff states that the Policy "was in the handbook that [she] . . . received").  The Handbook directed any employee to immediately contact his or her supervisor if he or she felt they had been harassed.  (Doc. 46-1 ¶ 3.)  The Handbook also contained an Open Door Policy that emphasized communication between managers and employees, and urged

---

> not an acceptable response unless the party has complied with the provisions of Rule 56(f) of the Federal Rules of Civil Procedure.
>
> All documents and other record materials relied upon by a party moving for or opposing a motion for summary judgment shall be clearly identified for the court.  Where possible, dates, specific page numbers, and line numbers shall be given.

M.D. Ga. R. 56.

[3] Because Defendant's motion for partial summary judgment just relates to the Hostile Work Environment claim, the Court will only discuss the facts that are relevant to this claim.
[4] In her Response to Defendant's Statement of Facts, Plaintiff states that it is disputed whether AGI had a sexual harassment policy in place because of a discrepancy involving a handbook provided during the deposition of AGI's President James Whitten.  (Doc. 63 at 1-2 ¶ 2.)  However, there appears to be no dispute that Plaintiff received a copy, and was aware, of the existence of a sexual harassment policy at AGI. (Doc. 54 at 133:7-134:1.)

employees to communicate with their supervisor about complaints or questions regarding their employment.  (*Id.* ¶ 4.)

In her Complaint, Plaintiff alleges that "[w]hile working at Defendants, [she] witnessed a culture that valued men over women.  Defendants treated women as being beneath the men working there."  (Doc. 1 ¶ 11.)  Plaintiff states that she "witnessed instances where men were allowed to break rules that women were not allowed to break."  (*Id.*)  Per Plaintiff, the entire sales staff at AGI was all male.  (*Id.* ¶ 13.) Defendant denies this fact.  (Doc. 27 ¶ 13.)

It appears that Plaintiff's difficulties began when she complained to management about the fact that the sales staff was improperly taking inventory from the storeroom to give to customers the salesmen wanted to keep happy.  (Doc. 1 ¶ 14.)  Plaintiff alleges that this practice violated AGI's rules for inventory control for which Plaintiff was responsible.  (*Id.* ¶ 14.)  Plaintiff states that, as a consequence of the sales staff's actions, she was prohibited from accurately keeping up with the inventory for which she was responsible.  (*Id.* ¶ 15.)  Plaintiff states that her comments to management upset the male sales staff.  (*Id.* ¶ 17.)  Per Plaintiff, Curt Davis and Dale Baxley, both male salesmen, referred to German as the "queen bee" and made statements such as "she's going to get knocked down."  (*Id.* ¶ 18.)  Davis and Baxley also allegedly referred to Plaintiff as a "bitch."  (*Id.*)  The only comment that Plaintiff heard personally was the "queen bee" statement.  (Doc. 54, 288:23-290:13.)  Plaintiff never heard any of the other statements directly from any individual.  (*Id.* at 288:23-25.)  Rather Mark Davis, an employee of AGI, stated that he heard a male employee refer to Plaintiff as a "bitch" after Plaintiff asked the employee to do something that he did not want to do.  (Doc. 48, 9:11-15.)  When Plaintiff walked off, the employee called Plaintiff a "bitch" behind her

4

back.  (*Id.* at 9:14-15.)  In another incident, Mary Weaver, another employee of AGI, states that Davis and Baxley complained to her that Plaintiff "was just being a bitch," "thinks she's a queen bee," and "[is] going to get knocked down."  (Doc. 49-2 at 173:4-174:13.)  Weaver stated, however, that she "never told [Plaintiff] the things they've said about her."  (*Id.* at 174:18-20.)

Plaintiff also alleges that certain salesmen spoke to her in ways that made her feel slighted and disrespected.  (Doc. 46-1 ¶ 13.)  For example, salesmen would say: "Not now, Deborah, we'll deal with that later.  I'm dealing with something important."/"You need to come up here, we need to talk."  (*Id.*)

Plaintiff further alleges that she felt degraded by Davis and Baxley's request that she fill the tires of a company vehicle they were driving.  (Doc. 63 at 3 ¶ 14; Doc. 46-1 ¶ 14.)  Per Plaintiff, these employees "had influence over her job."  (Doc. 63 at 3 ¶ 14.)

Plaintiff also contends that, although she reported to Mr. Whitten that she confiscated pornography from male shop employees on two to three occasions, Mr. Whitten did not punish the offenders or follow up.  (Doc. 63 at 4 ¶¶ 20-22; Doc. 54 at 293:24-294:2.)  Plaintiff, admits, however that she told Mr. Whitten that she "had already handled it."  (Doc. 46-1 ¶ 22; Doc. 63 at 4 ¶ 22.)

Plaintiff also alleges that Defendant "allowed the break room to become such a vulgar environment that it often became intolerable for women, including [Plaintiff], to eat lunch in the break room."  (Doc. 1 ¶ 23.)  According to Plaintiff, she was "constructively barred from using the break room, as were other females, because of the vile atmosphere Defendant allowed to exist in the break room."  (Doc. 63 at 4 ¶ 23.)  Plaintiff admitted to using profanity at work, but stated that her profanity was only used in the presence of another woman.  (*Id.* at 4 ¶¶ 24-25.)

5

Plaintiff's employment with AGI was terminated on September 23, 2009. (Doc. 46-1 ¶ 1.) Plaintiff alleges that she was eventually demoted by Mr. Whitten and terminated because she is a woman. (Doc. 63 at 8 ¶ 19.) Per Plaintiff, "Witten's reasoning and decision were influenced by male employees such as Curt Davis and Dale Baxley, among others." (*Id.* at 8 ¶ 19.)

I.   **DISCUSSION**

  A.  **Summary Judgment Standard**

Pursuant to Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Allen*, 121 F.3d at 646. A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. *See Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 804 (1999); *Celetox*, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.

6

*See id.* at 322-24.  Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.  To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict.  *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.  However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Having established the applicable summary judgment standards, the Court now evaluates whether any genuine material issue of fact remains that would preclude summary judgment in Defendant's favor on Plaintiff's hostile work environment claim.

### B. <u>Analysis</u>

"A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  Title VII is not meant to serve as "a general civility code." *Satchel v. Sch. Bd. of Hillsborough Cnty.*, 251 F. App'x 626, 630 (11th Cir. 2007) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).  As such, to prove a prima facie case of hostile working environment, a plaintiff must establish that: (1) she

belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon a protected characteristic (here, sex); (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for said environment under either a theory of direct or vicarious liability. *Miller*, 277 F.3d at 1275.

Defendant moves for partial summary judgment on Plaintiff's hostile work environment claim, contending that while Plaintiff is in a protected group, she cannot establish any of the remaining elements of her claim. Specifically, Defendant contends that 1) other than isolated references to Plaintiff as "queen bee" or "bitch," none of the other conduct alleged by Plaintiff to support her hostile work environment claim are related to her sex; rather they constitute gender neutral conduct motivated by personal animosity related to Plaintiff's treatment of the sales staff; 2) even if all of the conduct can be considered sex-related, it falls short of the severe or pervasive conduct required to establish a hostile work environment claim; and 3) because the alleged harassment was done by Plaintiff's coworkers, not her supervisor, and there is no evidence that Defendants knew or should have known of such conduct, there is no basis for imposing vicarious liability. (Doc. 46-2 at 3.) Because the Court similarly agrees that this case is one of coworker harassment for which Plaintiff has failed to establish any facts giving rise to a basis for holding Defendant liable, the Court finds that Defendant has demonstrated its entitlement to judgment as a matter of law.

Specifically, on the liability prong, Defendant contends that all of the harassment of which Plaintiff complains was committed by coworkers with no authority over her. (*Id.* at 18.) To this end, Defendant argues that Plaintiff failed to demonstrate that

8

Defendants knew or should have known of the alleged harassment by Plaintiff's coworkers.  (*Id.*)  Defendant notes that the only conduct Plaintiff reported to the Mr. Whitten, the owner and president of AGI, was the two or three incidents where she allegedly saw pornographic images in a magazine and one inappropriate picture brought by employees that work in the shop.  (*Id.* at 18-19.)  Plaintiff, however, informed Mr. Whitten that she had already handled the situation.  (*Id.* at 19; *see also* Doc. 54 at 293:7-14.)  Thus, Defendant contends that "Plaintiff's failure to complain about any sexual harassment or inform Mr. Whitten that the conduct was still occurring, despite the existence of adequate complaint policies and procedures being in place, is fatal to her claim." (Doc. 46-2 at 19.)

In opposition to Defendant's position, Plaintiff contends that Defendant should be held liable for the hostile work environment because "[t]he male sales staff exhibiting hostility towards [her] had influence over her job."  (Doc. 62 at 12.)  Plaintiff also states that Mr. Whitten "was informed of the pornography and took no action."  (*Id.* at 12-13.)  As for the harassment policy, Plaintiff alleges that Defendant failed to establish a sexual harassment policy and then subsequently attempted to cover this up during discovery. (*Id.* at 13.)

As to Plaintiff's first contention—that Defendant is vicariously liable because the male sales staff had "influence" over her job—the Court finds this argument to be untenable.[5]  "The basis of an employer's liability for [a] hostile environment ... depends on whether the harasser is the victim's supervisor or merely a coworker."  *Lewis v. U.S.*

---

[5] Here, the Court is assuming that Plaintiff made her statement about the "influence" of the male sales staff to argue in support of the employer's vicarious liability for the harassment.  In her brief in opposition to summary judgment, Plaintiff did not parse out her liability arguments and appears to have conflated the various tests for liability.  Since liability is an important element of the *prima facie* case, especially where coworker harassment is involved, the Court is perplexed by the vague and cursory treatment given to the liability issues.

9

*Dept. of Labor, Admin. Review Bd.*, 368 F. App'x 20, 31 (11th Cir. 2010) (citations omitted). "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Miller*, 277 F.3d at 1278 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775 1998)). In *Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013), the Supreme Court recently clarified who is a "supervisor" for the purpose of establishing vicarious liability under Title VII. Per the Court, "an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.,* to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2443. The Court went on to make clear that the law "presupposes a clear distinction between supervisors and co-workers" as opposed to some "nebulous definition of a 'supervisor.'" *Id.* Plaintiff may not avoid this distinction, for the purpose of attaching vicarious liability, by stating vaguely that "[t]he male sales staff exhibiting hostility towards [her] had influence over her job." Plaintiff presented no evidence to show that the sales staff were her supervisors, other than her unsupported assertion they retained an ability to exercise influence over her job. As such, Plaintiff has failed to demonstrate that the sales staff were considered her supervisors and has therefore failed to establish any basis for holding Defendant vicariously liable for the alleged harassment.

Therefore, because the record reflects that the individuals who allegedly harassed Plaintiff were merely her coworkers, Defendant can only be held directly liable if "it knew (actual notice) or should have known (constructive notice) of the harassment and

failed to take remedial action." *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000) (citation omitted). "Under this theory of direct liability, the [defendant] can be held liable for its own negligence or recklessness, but not for the conduct of its … employees." *Faragher v. City of Boca Raton*, 111 F.3d 1530, 1535 (11th Cir. 1997), *rev'd on other grounds by Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). "Thus, a victim of the coworker harassment must show either actual knowledge on the part of the employer or conduct sufficiently severe and pervasive as to constitute constructive knowledge to the employer." *Miller*, 277 F.3d at 1278 (citing *Breda*, 222 F.3d at 889).

Here, Plaintiff contends that Defendant is liable because Mr. Whitten "was informed of the pornography and took no action."[6]  This statement, contained in Plaintiff's response in opposition to Defendant's Motion for Summary Judgment, is the only detailed report of a complaint that Plaintiff references in support of her harassment claims.[7] (*See* Doc. 62 at 12-13.) Plaintiff states that she informed Mr. Whitten that she confiscated pornography from some of the male shop employees on two or three

---

[6] Plaintiff also alleged that Defendant is "responsible for the hostile work environment endured by [Plaintiff]" because of Defendant's "failure to establish a sexual harassment policy." (Doc. 62 at 13.) The Court is unaware what this fact is intended to support or refute. Plaintiff merely alleges the nonexistence of a policy as a fact without couching it in terms of a legal argument that defeats summary judgment. Nevertheless, as noted previously in this order, Plaintiff was aware of the existence of Defendant's Sexual Harassment Policy. *See* n.4.

[7] In her Statement of Material Facts, Plaintiff does state that she 1) "complained to management and management took no steps to resolve [her] disparate treatment" and 2) "complained about the disparate treatment she was receiving." (Doc. 63 at 6 ¶¶4-5.) However, Plaintiff provides no further facts about these alleged complaints and the evidence to which she cites to support these claims is insufficient to create a genuine issue of material fact on Plaintiff's hostile work environment claim. To show that she complained to management about her disparate treatment, Plaintiff cites to the Declaration of Mary Weaver. (*Id.* ¶ 4.) In her Declaration, however, Ms. Weaver states only that Plaintiff complained to management about the male sales staff's conduct regarding inventory parts. This allegation, even if credited despite the fact that it is not derived from Ms. Weaver's personal knowledge, is not an allegation of sexual harassment. As the Court understands the facts, Plaintiff's complaint about the inventory-related conduct of the sales staff is what gave rise to the subsequent harassing conduct; it was not the harassment itself. As such, the complaint about the staff's conduct related to inventory alone is insufficient to show that Plaintiff complained about harassing conduct.

Plaintiff's second citation is to page 321 of her deposition, nothing more. (*Id.* ¶ 5.) This page, however, gives no indication as to what evidence Plaintiff is attempting to use to support her contention that she made complaints to management for which there was no remedial action. In fact, this citation

occasions. (Doc. 54 at 291:3-292:4.) Per Plaintiff, however, she then told Mr. Whitten that she had "already handled it." (*Id.* at 293:7-14.) Though Plaintiff states her belief that Mr. Whitten should have "followed up," (*id.* at 293:25-294:1-2), she fails to indicate that she gave Mr. Whitten information about any residual problems that required further action from him. *Miller*, 277 F.3d at 1278 (explaining that actual notice of harassment may be established by "appriz[ing] the [employer] of the dimensions of the problem or even that there *was* a problem that required his attention") (citations and quotations omitted). Plaintiff's own version of the facts demonstrates that she gave Mr. Whitten assurances that the issues surrounding the pornography had been taken care of (by her). As such, aside from offering her belief that Mr. Whitten should have done something additional, Plaintiff has failed to demonstrate that Mr. Whitten's inaction was unreasonable, on these facts. *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1364 (11th Cir. 1999) (noting that the appropriate inquiry is whether the employer's actions (or lack thereof) were reasonable). Therefore, Plaintiff has failed to present evidence showing that there is any basis for holding Defendant directly liable for any harassing conduct. Accordingly, because Plaintiff has failed to establish Defendant's liability, either vicarious or direct, Plaintiff has failed to satisfy her burden of establishing a *prima facie* claim for a hostile work environment.[8]

---

appears to be a citation to evidence meant to show that Plaintiff was treated disparately when compared to her male comparators. Such evidence, however, is not relevant to Plaintiff's hostile work environment claims. If there is other evidence of complaints, Plaintiff has failed to address these in her brief or statement of facts. Though the Court is required to make an independent review of the record before deciding Defendant's Motion for Summary Judgment, "[a] litigant on summary judgment cannot shift their burden to the court by simply referring generally to the existence of "evidence" in voluminous exhibits, large portions of which are not addressed in his brief, with the expectation that the court will unearth any beneficial evidentiary nuggets that the filer may have neglected to mention." *Alexander v. City of Muscle Shoals, Ala.*, 766 F. Supp. 2d 1214, 1237 n.113 (N.D. Ala. 2011).

[8] As it relates to liability, Plaintiff made no arguments regarding harassment for which Defendant had constructive notice. Therefore, the Court has limited its analysis to the notice Plaintiff states that she gave Mr. Whitten.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment (Doc. 46) as to Plaintiff's hostile work environment claim (Count II) is **GRANTED**. The Court will set this case for jury trial as to Plaintiff's sex discrimination claim related to her demotion and termination for the October 2013 Trial Term by separate Order.

**SO ORDERED**, this  20th  day of August, 2013.

>  /s/    W. Louis Sands
> **THE HONORABLE W. LOUIS SANDS,**
> **UNITED STATES DISTRICT COURT**